UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RECEIVED IN PRO SE
APR 28 2023 @ 10:03 PM
VIA BOX.COM

JANE DOE,

*Plaintiff,*

vs.

Case No.: 1:23-cv-01623-NRM-RER

**THIRD AMENDED COMPLAINT**
WITH JURY DEMAND

PISTILLI REALTY GROUP,
30-86 32ND STREET LLC,
ANTHONY PISTILLI,
JOSEPH PISTILLI and
SAJO KOLENOVIC et al.

Hon. Nina R. Morrison

*Defendants.*

Comes now Plaintiff, Jane Doe and for her Third Amended Complaint states as follows:

### I. JURISDICTION AND VENUE

1. This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District, the subject property is located in this District, and most of the defendants reside and do business in this District. Plaintiff and Defendant Mr. Sajo Kalenovic's residence is in the same building in Queens, New York that is under the jurisdiction of this Honorable Court.

3. Defendant Mr. Anthony Pistilli and Mr. Joseph Pistilli residence is unknown to the Plaintiff

4. The alleged incidents in the Complaint also occurred in Queens, New York under the jurisdiction of this Honorable Court.

5. 30-86 32nd Street LLC 's apartment constitutes a "dwelling" within the means of the Fair Housing Act, Act, 42 U.S.C. § 3602(b)

## II. THE DEFENDANTS AND SUBJECT PROPERTY

6. Defendant Anthony Pistilli and Joseph Pistilli, commonly known as Pistilli , owns and operates residential rental properties in New York City, New York (the "subject property"). Pistilli may own and operate other residential rental properties in or around New York City.

7. At all times relevant to this action, Pistilli was the owner and property manager of 30-86 32nd Street LLC, Queens, New York.

8. The subject property is "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

## III. THE PARTIES

9. The Plaintiff Jane Doe , is a resident of Queens, New York with address of 30-86 32nd Street, Apt 12, Astoria, NY 11102.

10. Defendant Sajo Kolenovic a.k.a Sonny, is the building superintendent of apartment building 30-86 32nd Street, Astoria, NY 11102 and is a resident in the same apartment building with address of 30-86 32nd Street, Apt 3, Astoria, NY 11102 and is employed by the other Defendants Pistilli and his business entities Pistilli Realty Group and 30-86 32nd Street LLC.

11. Defendants Anthony Pistilli and Mr. Joseph Pistilli, resident is unknown

12. Defendant entities Pistilli Realty Group and 30-86 32nd Street LLC are the owners, operators of apartment building 30-86 32nd Street, Astoria, NY 11102, owned by Defendant Anthony Pistilli and Joseph Pistilli .

### IV.     NATURE OF ACTION

13. This matter arises pursuant to Fair Housing Act, 42 U.S.C. §§ 3601 , et seq. ("FHA") and 42 U.S.C. § 3617

### V.     BACKGROUND

14. I am a citizen of the United States, State of New York currently residing in 30-86 32nd Street, Apt 12, Queens, Astoria, NY 11102.

15. I have leased an apartment in a building owned and managed by Pistilli, Pistilli Realty Group and a corporation named : 30-86 32nd Street LLC in 2018 till now.

16. Mr. Sajo Kolenovic a.k.a Sonny is the building superintendent of this building and resides in the same building , one floor below my apartment at 30-86 32nd Street, Apt 3, Astoria, NY 11102.

17. Mr. Sajo Kalenovic a.k.a as Sonny has sexually assaulted , rape me, continuously harassed me and stalking till this date under the supervision, aproval and protection of the property owners Mr. Anthony Pistilli and Joseph Pistilli.

18. The Plaintiff alleges that the landlord, Pistilli, engaged in retaliatory behavior by refusing to renew her lease and/or negotiate, and by filing a lawsuit for eviction and intentionally prolonging the landlord-tenant case # L&T 66467/19, as retaliation because the Plaintiff filed a complaint with HUD.

19. The landlord, Pistilli, withdrew the landlord-tenant case # L&T 66467/19 during the pretrial stage after 2.5 years of litigation. Throughout the years, the tenant provided

evidence to the court through discovery and DHCR subpoenas, which demonstrated that the court would not allow the tenant to be evicted.

## VI. FACTUAL ALLEGATIONS

**HUD Administrative Process and Background**

20. On or around August, 2019 The Plaintiff filed a timely filed fair housing complaint for sexual harassment against Defendants 3086 32nd Street LLC with the United States Department of Housing and Urban Development ("HUD")

21. On or around September 14 ,2019 the U.S. Department of Housing and Urban Development (HUD), Office of Fair Housing and Equal Opportunity (FHEO) received plaintiff's HUD 903 online housing discrimination complaint form.

22. On or around September 24 ,2019 HUD emailed me receipt of plaintiffs fair housing discrimination inquiry against 3086 32nd Street LLC.

23. On or around September 28 , 2019 The Plaintiff mailed the form which was requested by a specialist from HUD.

24. Plaintiff was also informed that the HUD case has been moved to the next level.

## VII. CAUSES OF ACTION

### COUNT I

**Violation of 42 U.S.C. Sections 3601-3619**

25. At all times relevant to this action, Pistilli controlled all aspects of the management and operation of his residential rental properties including, but not limited to, finding prospective tenants, accepting or rejecting prospective tenants, setting rates for rent,

collecting security deposits and rents, hire employees, negotiate leases to contract with tenants, accepting requests for repairs and evicting tenants.

26. I have leased my apartment from Defendants Pistilli in June 2018.

27. Since the day I rented this apartment, building superintendent Defendant Mr. Sajo Kolenovic, began subjecting me to discrimination on the basis of sex, including conduct that was severe or pervasive and and unwelcome sexual harassment, on multiple occasions. Such conduct has included, but is not limited to:

   a) Sending me unwanted text messages and making intrusive, unannounced visits to my apartment under the guise of repairs or offering help without my consent, in order to further his sexual advances.

   b) The very beginning I moved in I caught him opening my mail box and holding my personal mail in his hands.

   c) Coming to my apartment without any notice offering me an air conditioner or electric cable and wanted to talk to me and see the apartment inside, uninvited, and touching my body. The plaintiff repeatedly rejected Defendant's advances and made clear that his conduct was unwelcome, asking him to leave me alone and asking him not to enter my apartment.

   d) He would unexpectedly come to my apartment while my daughter, mother, and I were having lunch. He insulted us by saying hurtful things about my daughter's father, whom he saw crossing the street while picking her up for visitation.

   e) While I was having Bible class with my elder mother and her bible sisters , he again came for the electricity issue with a lot of anger and interrupted my mother's class, with anger why we study Christian religion in the apartment and we should not do that here.

f) When I was in the lobby, he would often pull me down to the basement and offer me the use of his laundromat set, ask me to take money from a piggy bank for my daughter, offer me furniture left behind by former tenants, suggest I use the basement as personal storage or as a gym area only for myself and nobody else in the building. I refused his offers. He insisted that I sit and keep him company on one of the chairs that were part of the furniture set. During these interactions, he made inappropriate remarks and unwelcome sexual advances.

g) He also intimidated and harassed me by insisting that my divorced mother become a girlfriend to his widow 82 year old father who he lives with and works for the defendants.

h) He went beyond any norms of behavior and made me extremely worried when Mr. Kalonovic asked me and insisted that his father would not mind picking up my daughter from school if I needed help. I barely knew their names. He talked many times in our native language.

i) He would turn off the heating to force me to call him and request that the thermostat be fixed. When I refused his requests to come upstairs and fix the radiator in the bedrooms, he made inappropriate demands and spoke to me inappropriately. He even went so far as to ask me to send him photos in exchange for talking to his boss about renewing my lease and not evicting me from my apartment. He claimed to have done similar favors for other female tenants in the past and offered to take care of me since he was a close friend of the owner. Additionally, he boasted about knowing about his boss's illegal activities, such as stealing money from the government using the tenants and giving them split money back under the table. He used this to demonstrate that he was a close and trustworthy friend of the owner for many years and that he could use

his influence to help me. As a result, it is necessary to order that he be removed from the apartment building.

j)  On or around September 29, 2018, while he was away on vacation in his home country, he somehow managed to contact me through the messaging app Viber and texted that "he is missing me" . He then requested a photo of me to send to him through Viber. I asked him to stop contacting me on my private Viber account and told him that "I am changing my phone" he said " little more if u can baby."

k) On September 01, 2018 and October 01, 2018, after he came back from his vacation he continued to harass me on my viber text messages starting with "Baby" or "thanks love". "Are you mad at me love,", "Can you call me." I said that my phone's "battery is down" and later I said that I will change my phone which I did.

l)  He threatened me, saying that if I wasn't good to him, his boss would evict me. On the other hand, if I was "nice to the Super," he would tell his boss to renew my lease. He gave me examples of similar tactics he has used over the years. I was very scared because I was still dealing with trauma from him, and I couldn't get myself together enough to find a job and rent a new apartment. Meanwhile, I was searching for new apartments with two rental agencies. To make matters worse, he has been stalking me on the street and asking about the visitors and guests in my apartment.

m) After I informed Mr. Pistilli about the super's behavior, Mr. Kolenovic tried to convince me not to do it, claiming that nobody would care about what I say. He further warned me that his boss was very wealthy, well-connected, and influential in the city. According to Mr. Kolenovic, his boss had many people working for him who would do whatever he asked them to do.

n) Subsequently, the super started using various tactics to intimidate and threaten us. He made threatening gestures, blocked my entrance to the building, turned off the heating, and stalked us. He also made fist signs and had dogs bark at us in the lobby to scare us.

o) In 2020, during the pandemic, I was going downstairs to dispose of my heavy wardrobe furniture when Mr. Kolenovic approached me in the lobby without permission, holding my hands and attempting to hug me. I pulled back and told him to stop touching me and stay away. He became angry and threatened to evict me and my family, upset that I had rejected his unwelcome sexual advances.

p) On another occasion during the pandemic, I was discarding my old bed furniture with many pieces when the super and his father began to harass and yell at me. They blocked my exit by shutting the entrance door. I warned them that I would call the police if they continued to prevent me from leaving.

q) The building manager, Mr. Kolenovic, acted as if he owned the building and even threatened me, saying that the only way I could continue living in the apartment was if I was "nice to the Super."

28. On February 22, 2019 , Mr. Kolenovic came to my apartment for the purpose of fixing guard rails, sent by Anthony Pistilli with this assignment. Mr. Kolenovic came late and instead brought with him a bottle of wine, but not tools. Mr. Kolenovic insisted that I should drink alcohol with him because it is a special wine since he brought it from his country Montenegro from his vacation. Mr. Kolenovic then intoxicated me with alcohol with rape drugs then forcibly sexually assaulted me.

29. I was extremely scared for my safety and feared retaliation from the powerful landlord, Pistilli. The incident had left me so traumatized that I couldn't even muster the strength or

courage to report it to the police or speak to someone immediately. Furthermore, the effects of the rape drug made it difficult for me to move my body.

30. It wasn't until later, with the help of a friend whom I confided in, that I reported the incident. However, earlier, Mr. Kolenovic had threatened me, warning me that Pistilli was well-connected and advising me to keep quiet and not report anything to anyone.

31. After the incident, I fell into a deep depression and extreme fear. I couldn't even get out of bed or go to work, and I was afraid to leave my apartment. The person who assaulted me still lives downstairs on the main floor of the same building and is often found at the entrance. Every day, I fear for my safety, worrying that he might come in at night to seek revenge or put something harmful in my apartment when I'm not home.

32. On or around October 18th, 2019 Plaintiff met and retained an attorney to advocate for her fair housing rights.

33. When the incident was reported again to the building owner, Pistilli, by the plaintiff's advocate, he not only ignored it but also supported his employee and aggressor, Mr. Kolenovic. Pistilli provided Kolenovic with free legal advice through his personal attorney and allowed him to continue living in the same apartment building, just one floor below the plaintiff. Furthermore, Kolenovic continued to serve as the plaintiff's superintendent, with unrestricted access to her apartment at any time. The plaintiff felt so unsafe that she terminated her attorney's services for fear of retaliation. Despite reporting the incident to Pistilli, Kolenovic continued to sexually harass the plaintiff on multiple occasions.

34. After being aware of the incident, Pistilli's employee Kolenovic filed a false affidavit claiming that he never entered the plaintiff's apartment alone, which was entirely untrue. Moreover, Pistilli threatened to evict the plaintiff from her apartment despite having knowledge of the situation.

35. On April 26, 2019, when I asked Mr. Kolenovic about a missing Amazon package for my daughter's birthday, he refused to help me and denied access to the video surveillance footage in the lobby. Mr. Kolenovic then insisted on entering my apartment to install window guards, as instructed by his boss, Anthony Pistilli. During this encounter, Mr. Kolenovic sexually harassed me once again, offering to buy a gift for my daughter in exchange for sexual favors, instead of providing a resolution for the stolen birthday gift.This was explained to the police officers. I continue to suffer from fear, mental anguish, depression, and trauma as a result of the sexual assaults and harassment by building superintendent Mr. Kolenovic.

36. On or around February 21, 2021, as the harassment continued from the building superintendent, the plaintiff had no other option but to hire a second advocate to protect her fair housing rights.

37. On or around February 21, 2021, due to the ongoing harassment by the building superintendent, the plaintiff had no choice but to retain a second advocate to protect her fair housing rights. When this advocate reported the incidents to Pistilli, he responded by threatening to sue the plaintiff for filing frivolous claims, through his lawyer. As a result, the plaintiff now fears for her safety and the safety of her family, and is unsure about what retaliatory actions Pistilli and his associates may take against her.

38. The plaintiff is deeply distressed and traumatized by the sexual assault committed against her by the defendant's employee, Mr. Kolenovic, and is further distressed by the landlord's, Pistilli, lack of empathy and support for her situation. Instead of taking action to ensure the plaintiff's safety, Pistilli has continued to employ and protect Kolenovic, providing him with free legal advice and offering him residence in the same building.

39. The plaintiff is greatly troubled by Pistilli's complete disregard for her wellbeing and his apparent support of Kolenovic, who has caused her immense harm. Despite being made aware of the sexual assault, Pistilli has made no attempt to approach the plaintiff to offer his concern, empathy or any form of assistance.

40. Furthermore, Pistilli's threatening behavior towards the plaintiff's fair housing advocate, in response to the plaintiff's report of the incident, has left the plaintiff feeling unsafe and uncertain about the future. As a result, the plaintiff seeks justice through this court, in the hopes of obtaining the support and compensation she is entitled to for the emotional and physical trauma she has suffered due to the defendant's actions.

41. The plaintiff is an "aggrieved person" as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of Defendants' discriminatory conduct.

## COUNT II

**Violation of 42 U.S.C Code § 3617**

42. Plaintiff realleges and incorporates by reference herein the allegations described above.

43. In or about the summer of 2019, the Plaintiff alleges that the Defendant, Mr. Pistilli, engaged in retaliatory behavior by refusing to renew the Plaintiff's lease. Additionally, the Plaintiff claims that Mr. Pistilli filed a lawsuit for eviction as a form of retaliation due to the Plaintiff's complaint to HUD.

44. It is further Mr. Pistilli intentionally prolonged the landlord-tenant case as a means of punishment with the intent to wear down the Plaintiff and coerce her to abandon the apartment. The Plaintiff asserts that this action was in response to her complaint with HUD.

45. Defendants, Pistilli, withdrew the landlord tenant case during the pre-trial stage after the court denied their attempt to evict the Plaintiff.

46. The Defendant, Mr. Pistilli, subsequently withdrew the landlord-tenant case during the pre-trial stage after the court denied their attempt to evict the Plaintiff.

47. Defendants Pistilli are liable for the actions of Mr. Kolenovic.

48. The above-described actions and conduct of Defendants caused the plaintiff to suffer economic harm, physical harm, fear, anxiety, and emotional distress.

49. Based on the actions and statements described above, the defendants have:

   a) Denied lease renewal, refused to negotiate for rental, or otherwise made the dwelling unavailable or denied it to the plaintiff as a form of retaliation:

      i) Denied lease renewal, refused to negotiate for rental, or otherwise made the dwelling unavailable to the plaintiff before the expiration of their lease. The defendants chose to cover up their employee Sonny, instead of protecting the plaintiff from any sexual assault, harassment, or stalking.

      ii) Refused to renew the plaintiff's lease or negotiate for rental before the lease expired, making the dwelling unavailable or denying it to the plaintiff.

50. On or around August 28, 2019, Defendants initiated eviction proceedings in Queens Landlord Tenant Court, and deliberately prolonged the case until February 2022 as an act of retaliation because I filed a complaint with HUD to assert my rights.

51. The plaintiff alleges that Pistilli refused to provide a lease before, during, and after the landlord-tenant case, despite the plaintiff having made all payments for the signed lease year. Furthermore, the plaintiff contends that Mr. Pistilli, the defendant, engaged in intentional and willful retaliation in reckless disregard of the plaintiff's rights

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff pray that this Court conduct a jury trial and enter a Final Judgment as follows:

A. Declares that the Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, et seq and 42 U.S. Code § 3617
    a) Injunctive relief: Court order that prohibits the discriminatory behavior and may require the defendant to take affirmative steps to remedy the harm caused by the discrimination and retaliation.
    b) Damages: The Plaintiff seeks monetary damages, including compensation for any financial losses or emotional distress resulting from sexual assault, physical and mental trauma, sexual harassment, and mental anguish caused by the Defendants' discriminatory and retaliatory conduct during the time period described in the complaint.
    c) Punitive damages: award punitive damages in addition to compensatory damages. Punitive damages are intended to punish the defendant for their wrongful conduct and deter others from engaging in similar behavior.
    d) Attorney's fees and costs: plaintiff is entitled to recover their attorney's fees, court fees, costs incurred in pursuing the claim. and
    e) Modification of policies or procedures: A court may order a defendant to modify their policies or procedures to ensure compliance with the Fair Housing Act.
B. Enjoins the defendants, their employees, and all other persons acting in active concert or participation with them from:
    a) Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental of a dwelling;
    b) Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act, as amended;
    c) Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of the Defendants' unlawful practices;
    d) Awards such preventive relief, including a permanent or temporary injunction, restraining order, or other order against Defendants for a violation of the Fair Housing Act, as amended, pursuant to 42 U.S.C. § 3614(d)(1)(A);
    e) Assesses civil penalties against the Defendants ; and

C. Ordering the removal of Defendant Mr. Kolenovic from the apartment building.
D. Requires defendants to obtain fair housing training and implement comprehensive non-discrimination policies and complaint procedures to prevent sexual harassment at their properties and retaliation in the future.
E. Pistilli violated the federal law and this court should order barring future discrimination and retaliation.
F. Granting such further relief as this Court may deem just and proper.

**FURTHER**, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated:  Queens, New York
April 01, 2023

/s/ *Jane Doe*
Jane Doe
*Pro se*
30-86  32nd Street, Apt 12
Astoria, NY 11102